MARGARET FOSTER *v.* THEODORE M. ROCHE, as Trustee, etc., Impleaded, etc., Appellant, CHARLES B. FITZPATRICK Purchaser, Respondent.

A judgment in a partition suit directed a sale of the premises by a referee who, after payment of costs, taxes, liens, etc., was directed, among other things, to pay the share or interest of defendant R., as trustee, in the manner specified. After the referee had published notice of sale the decree was amended by consent of the parties so as to require the purchaser to pay the purchase-money to the F. L. & T. Co. to the credit of the action, to be drawn out only on orders of the court. By the terms of sale the purchaser was, at the time and place of sale, to deposit ten per cent of the purchase-money and to pay the balance at the office of the company upon a day specified. F. became the purchaser, paid the purchase-price and received a deed. Upon a subsequent motion on the part of R. to vacate and cancel the deed the following facts appeared: At the time and place of sale no person being present on the part of the F. L. & T. Co., the purchaser, with the consent of the attorneys present, paid the ten per cent to the referee. No copy of the decree as amended, or of the order for amendment, was ever served upon the purchaser or said company, and no proof was presented that the former knew of the amendatory order. At the time of payment of the balance of the purchase-money and delivery of the deed, the purchaser, referee and plaintiff's attorney attended at the office of the company, and after deducting the ten per cent paid and taxes and assessments paid by the purchaser, he handed to the referee the balance of the purchase-money, who deposited it with the company to the credit of the action. It opened an account with the referee, who subsequently drew out nearly all of the money. Thereafter R. gave a written consent that the order for amendment of the decree be vacated, and an order to that effect was entered. There was no proof that the parties to the action had not received each his distributive share of the purchase-money. *Held*, that the motion was properly denied; that the order for amendment having been made by consent of the parties, they were competent in like manner to change, vary or waive its terms, and so could consent that the ten per cent be paid to the referee; that it was immaterial who delivered the balance to the F. L. & T. Co., upon the receipt thereof by it the obligations of the purchaser were met, and the payment could not be invalidated even if loss occurred because the order of the court as to the mode of withdrawing the money was not complied with; also, that as the order was vacated with the consent of R. before the application to enforce it, the court below was not bound to exercise over the purchaser its summary jurisdiction and the negligence of R. justified its refusal.

(Argued November 25, 1889; decided December 10, 1889.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, made May 24, 1889, which affirmed an order of Special Term, denying a motion to compel one Charles B. Fitzpatrick, a purchaser at a sale under the judgment herein, to surrender for cancellation a deed executed to him by the referee appointed to sell.

The action was for partition. Roche was made defendant as one interested in the property to be partitioned, and as such appeared in the action by attorney. On the 15th of June, 1886, the trial resulted in a judgment that the premises in question be sold at public auction by James Kearney, who was " appointed referee for the purpose of making the sale and carrying out the provisions of the judgment." He was directed to give notice of the time and place of sale according to law and the practice of the court, and after confirmation of the sale execute a deed or deeds to the purchaser or purchasers at such sale, upon their complying with the conditions on which the deeds were to be delivered, and that such sale and conveyance be valid and effectual forever. Out of the proceeds of sale he was directed to pay the costs of the several parties, retain his fees, discharge taxes and liens, including mortgages and judgments, and from the share or interest given to the defendant Roche, pay certain judgments against the estate represented by him in the order of their priority. It was then ordered that after such payments and deductions should have been made " an accounting shall be had and taken between the plaintiff, Margaret Foster, and the defendant, Theodore M. Roche, as substituted trustee, etc., before the said James Kearney, Esq., who is also hereby appointed referee to take such account, to ascertain the amounts to which they shall be respectively entitled from the proceeds of such sale, after such payments and deductions as aforesaid, and after the making of such allowances, credits and disbursements respecting the said premises as between themselves as they may be respectively entitled to," and that having been ascertained, divide the residue in such proportions as the proper credits and allowances would permit between the plaintiff

Foster and the defendant Roche and pay one of such shares to each.

The referee, on the 15th of June, 1886, gave notice that the sale would take place on the thirteenth of July, then next, but by subsequent notices it was postponed to October 5, 1886. In the meantime and on the 29th of September, 1886, the decree was amended by the further order made by consent of the parties to the action "that the purchaser or purchasers at the sale of said premises to be had as aforesaid pay the amount of the purchase-money due by them respectively to the Farmers' Loan and Trust Company to the credit of this action, to be drawn from said trust company only upon orders of this court after two days' notice of an application therefor, to be given by the referee to the respective attorneys for the plaintiff and for the defendants, or by either of said parties to the other."

It is stated in the appeal book, as conceded, " that at the sale of October 5, 1886, Mr. Fitzpatrick bought the lot No. 47 Great Jones street for $20,550, and, also, that under the terms of the sale he was to deposit ten per cent at the time and place of the sale of the purchase-money with the Farmers' Loan and Trust Company, for which their certificate was to be given, and that the balance of the purchase-money was to be paid on the 5th of November, 1886, at the office of said company," and from the terms of sale it also appears that twelve o'clock noon was named therein as the hour when payment, as above provided, should be made and " when," as was also stated, the referee's deed would be ready for delivery.

On the 30th of April, 1887, Roche made an affidavit showing, in substance, the decree and sale as above stated, the filing by the referee of report of sale, and stating that the referee, on the 6th of November, 1886, executed and delivered to the purchaser a deed of the premises, and that the same was recorded on that day, but upon information obtained by him March 21, 1887, that the purchaser Fitzpatrick "has not complied with the provisions of the interlocutory judgment

herein, or of the terms of said sale, by depositing, with the Farmers' Loan and Trust Company, to the credit of this action, the amount of the purchase-money due by him on his purchase, as aforesaid, or any part thereof, and that by reason thereof he is not, and never has been, entitled to a deed of said premises; that if any money was paid by him on account of said purchase it was paid to the said referee, personally, or put under his control in such manner as to enable the said referee to convert the same to his own use."

Upon this affidavit, the judgment in partition and the report of sale, he moved at Special Term that the deed given to the purchaser be "vacated, canceled and discharged of record." The purchaser opposed the motion, showing that the attorney for the plaintiff and the attorney for Roche attended the sale; that he then paid the ten per cent called for by the terms of sale, and that, on the day named, viz., November fifth, he attended, with counsel, at the office of the trust company, prepared to pay the residue of the purchase-money and take the deed; that the referee was not ready to pass the title, and the matter was adjourned to the following day (November sixth), when he again attended as before. The referee and plaintiff's attorney came also. Allowance was made by them for the sum paid on the day of sale, also for taxes and assessments, and the residue, $17,371.29, was handed by him to the referee, who, in his presence and the presence of the plaintiff's attorney, who had taken part in computing and ascertaining the sum due, and in the negotiation with the trust company, deposited the money so paid to the trust company to the credit of the action.

The Special Term, being of opinion that the facts should be more fully disclosed to the court, sent the matter to a referee to ascertain what they were and postponed the final hearing of the matter until his report should come in. The plaintiff, defendant and purchaser appeared before the referee. Neither the defendant, Roche, nor his attorney in the action, offered themselves as witnesses, but upon such

proof as was produced the referee found that, at the time and place of sale, there was no person present on the part of the Farmers' Loan and Trust Company to receive the ten per cent required by the terms of sale to be paid; and the purchaser, with the consent and acquiescence of the attorneys present at the sale, paid the ten per cent, amounting to $2,055, to the referee, and took his receipt therefor. He also found that no copy of said order or of said interlocutory decree, as amended, was ever served upon the said purchaser or upon the Farmers' Loan and Trust Company, and that there was no proof presented that the said purchaser ever knew or heard of the provisions of said order.

The referee also finds the transaction at the office of the trust company to have been as stated in the affidavit of Fitzpatrick, above recited, and "that no part of the money paid by the purchaser for taxes has ever been returned or offered to be returned;" that the trust company received the sum paid by the purchaser, November sixth, "and opened an account therefor on that day with said James Keavney, referee, in the matter of *Foster* v. *Roche*," and gave to him a bank deposit-book; that the said sum so deposited in said company was all drawn out by said referee prior to February 15, 1887, excepting the sum of $109.46; "that no proof had been presented before him that the parties to this action, or any of them, have not received each his distributive share of said purchase-money," and that "on the 14th day of March, 1887, the said defendant Theodore M. Roche, who makes this motion to cancel said deed, gave his consent, in writing, that the said order directing the purchaser to pay the amount of his bid to the Farmers' Loan and Trust Company, to the credit of the action, should be canceled and vacated, and that the said order amending said decree as aforesaid was absolutely vacated and set aside by an order of this court, dated March 15, 1887." He, therefore, reported that in his opinion the motion to vacate and cancel the deed should not be granted.

The Special Term, before whom the matter was again brought upon the original papers and the referee's report,

after hearing counsel, were of the same opinion and denied defendant's motion.

*Edward Perkins* for appellant. The purchaser, both in the making and in the carrying out of the sale, was dealing with agents of the seller, and he was, therefore, dealing with them at his peril, and was bound to ascertain the extent of their authority. (*Williamson* v. *Berry*, 8 How. Pr. 546 ; *Colclough* v. *Sterum*, 3 Bligh, 181 ; *Cofer* v. *Miller*, 7 Bush. [Ky.] 545 ; *Campbell* v. *Knight*, 26 Me. 224 ; *Wilkinson* v. *Filly*, 24 Wis. 441 ;. *Babcock* v. *Cobb*, 11 Minn. 347 ; *Barnes* v. *Morris*, 4 Ired. Eq. 22 ; *Chapman* v. *Harwood*, 8 Blackf. 82.) The court had jurisdiction to require the purchaser to surrender the deed. . (*Hale* v. *Clauson*, 60 N. Y. 341 ; *Wood* v. *Mann*, 3 Sumn. 323 ; *Casamajor* v. *Strode*, 1 S. & S. 381 ; *Landsdown* v. *Ellerton*, 14 Ves. 512 ; *Brasher* v. *Cortlandt*, 2 Johns. Ch. 505 ; *Andrews* v. *O'Mahoney*, 112 N. Y. 572.) The order is appealable. (*Gould* v. *Mortimer*, 26 How. Pr. 169 ; *Requa* v. *Rea*, 2 Paige, 339 ; *Brown* v. *Frost*, 10 id. 243 ; *Collier* v. *Whipple*, 13 Wend. 224 ; *Nichol* v. *Nichol*, 8 Paige, 349 ; *Libby* v. *Rosekrans*, 55 Barb. 219 ; *Howell* v. *Mills*, 53 N. Y. 322 ; *Fisher* v. *Hersey*, 78 id. 388 ; *King* v. *Platt*, 37 id. 155 ; *People ex rel.* v. *Common Council*, 78 id. 56, 61 ; *Tripp* v. *Cook*, 24 Wend. 143 ; *People* v. *Bd. of Assessors*, 39 N. Y. 81, 88 ; *People ex rel.* v. *Gallagher*, 93 id. 466 ; *People ex rel.* v. *Chapin*, 104 id. 99.)

*John A. Deady* for respondent. The order is not appealable to this court. (*Howett* v. *Merrill*, 113 N. Y. 630; *Conklin* v. *Taylor*, 68 id. 221 ; *Mills* v. *Davis*, 53 id. 349.)

DANFORTH, J. Assuming the order to be subject to review in this court, I find no reason to differ from the conclusion reached by the three tribunals which have passed upon the questions embraced in it. On the contrary, it seems to me that a different result would tend neither to right nor equity. It is to be borne in mind that the only ground of this proceed-

ing is the omission of the purchaser to deposit the money
actually paid into the trust company in a manner technically
different from the mode adopted. The appellant does not
show that anything is coming to him from that money, or
even that the accounting has been had which may entitle him
to something. He went before the Supreme Court and not
only asked it to exercise its extraordinary powers over a pur-
chaser for value, without notice, but to do so in favor of one
who had himself, or as trustee, so far as appeared, incurred no
loss, or who, if any loss was, in fact, incurred by any one, was
morally culpable in respect to the circumstances which led to
that loss. The appellant stood as trustee for others. With a
supposed regard to their security he obtained a direction as to
the sale and the disposition of the purchase-money, and thence-
forth gave the matter no attention whatever. The order was
permitted to lie in the obscurity of the record until the mis-
chief was done, and was then produced only to be vacated by
his consent. The purchaser knew nothing of it. The money
was to be paid into the trust company. This much, but
no more, was brought to the attention of the purchaser.
Although a party to the action and active in procuring the
order, the defendant neither served the purchaser with a copy
of the order nor did he give him any notice of it. The pur-
chaser knew, indeed, of the conditions or terms of the sale as
prepared by the referee and which the bidder was to sign.
It contained, however, no reference to an order or other action
of the court, but, so far as appeared, the terms were either
suggested by the parties or prescribed by the referee. These
terms concerned no one but the parties to the action — the
order had been made by their consent — and they were com-
petent in like manner to change, or vary, or waive its terms.
If, under the conditions of sale, the purchaser was to deposit
ten per cent at the time and place of the sale with the trust
company, it was competent for his attorney and the attorney
for the plaintiff and the referee to agree that the referee, in
the absence of an officer or agent of the company at the time
and from the place of sale, should act in his place. And so

they did agree, and by an act in which this appellant, through his attorney, participated, the ten per cent called for was paid. Again, the terms of sale notified the appellant, as they did the purchaser, that the balance of the purchase-money was to be paid at twelve o'clock on the fifth of November at the office of the trust company, and that the deed was then and there to be delivered.

On the adjourned day the purchaser again appeared, and the referee, and the balance of the money was then paid by the purchaser, received by the trust company, and credited by that company, in the way such moneys were usually received and entered upon their books. It is of no significance that the money passed from the referee to the trust company, instead of coming to it directly from the hand of the purchaser. The plaintiff's attorney and the referee were both interested, and it was their duty to see that the computation was correct, that the sum paid corresponded to it; and it is entirely immaterial whose hand conveyed the money over the counter to the officer of the company who received it. Payment of the money was made, and to the proper party. No loss could happen from anything then done, or with which the purchaser was concerned. The loss, if any, occurred because the order of the court as to the mode of withdrawing the money was not complied with, and that was made possible because no one charged with the carriage of the decree thought it worth while to notify the trust company or serve upon it a copy of the order. That duty was not imposed upon the purchaser. It was the duty of this appellant to see to it that the trust company had notice of the limitations put upon the authority of the referee.

It would be in the highest degree dangerous, and opposed to every principle of equity, if it should be held that a payment so made could be impeached or invalidated because the parties interested in the proceeds of a judicial sale allowed a referee, for whose conduct the purchaser was in no way responsible, to have an advantage which the letter of the decree denied.

As bearing upon the claim that the court should exercise over the purchaser its summary jurisdiction, it is also to be considered that the moving party deliberately consented to the annulment of that portion of the decree which, by amendment, regulated the disposition of the purchase-money. The referee does not find, and was not asked to find, when Roche first learned that the money had been drawn out from the trust company by the referee. There is no suggestion, except his own affidavit, that he did not know the terms or manner in which it was, in fact, deposited. If he did not it was because he did not choose to inquire. According to his affidavit he became aware of it on the 21st of March, 1887, four months after the transaction, which he knew was to be completed on the fifth or sixth of the November preceding, and in the meanwhile, upon an occasion sufficient to put him upon inquiry, he consented in writing, as did also the other parties to the action, to vacate the order for the breach of which he now complains. He seems to have distrusted the referee appointed to make the sale as early as September and before it took place, but he took no precaution to prevent third persons or the purchaser from dealing with him as one entitled to be trusted, and finally vacated and set aside the order which his mistrust had called into being. The order was vacated before he applied to the court to enforce it, and then only against a person wholly innocent and who had acted with circumspection and caution.

There are, however, other circumstances. The appellant, as we have seen, discloses no loss either on his own part or that of any other person; he fails to show even that the referee who drew the money from the trust company did not apply it to the payment of debts or liens superior to his own interest, or that the referee is insolvent, or even unwilling to account for the money obtained. But without regard to those considerations the appellant's own negligence was quite sufficient to justify the court below in refusing its assistance, especially against a purchaser who, without notice, paid the purchase-money in good faith, and, as the court finds, dis-

charged his entire duty. The appeal from the order which followed that finding is without merit and, therefore, fails.

The order appealed from should be affirmed, with costs.

All concur.

Order affirmed.